If it please the court, I'm Robert E. Bushnell for Samsung Electronics, CEO of Goldfinch. I'll be arguing instead of Mr. Stern this morning. I'd prefer to reserve five minutes for rebuttal. In the, this is the second time this application has been before the court. The claims are the same. On the 18th of January, 2002, the court issued an opinion and found certain deficiencies in the examiner's proposed combination of the primary reference Northrop, which remains the same here, and the Thunder Chopper manual, and the Patent Office has taken that as an invitation to justify that combination. Before the court today are ten distinct proposed combinations of prior art, all of which rely on the same Northrop primary reference, and five of which have the Thunder Chopper manual. The difference is they've also included the reference for a digital wristwatch, Wakai, and they've also included Tsubo, which is a VCD. Here in the U.S. it's called VCR programming demonstration. Now, the solicitor has suggested Lee's mistake, this is on page 30 of the solicitor's brief, is in focusing too narrowly on the specific teachings of the secondary references. The solicitor also argued before the United States Supreme Court and the KSR International, that the Federal Circuit has repeatedly stated that common knowledge and common sense, even if assumed to derive from the PTO's expertise, do not substitute for evidence of specific inner suggestion to combine the primary art of citing. The Federal Circuit's test is problematic, this is from the solicitor's brief, page 19, in KSR, because the factual... But it would be very helpful to me if you would go directly to the combination of references that the office is relying on, and help us to understand where they are. Thank you, Your Honor. Yes. Is there some plain feature here that's missing in the primary art? Yes. What is it? Okay, we'll go to that. If I could interject a minute. The reason that the court said common sense and so forth are no substitute. They don't teach television circuits in engineering school for electrical engineers. They don't teach it in graduate school for electrical engineers. The primary reference, Northrop, is the preeminent person of ordinary skill in the art. Northrop is our CAO. We have two questions here. One, what are all the features in the primary art? And two, is there a suggestion in teaching, et cetera, to combine them? So if you could address those two questions. First of all, what's missing? What feature, plain feature, is missing in the primary art? Okay. What the court looked at the last time was claim 10. That claim talked about an automatically demonstrating selection and adjustment of picture functions. Now, Northrop has picture functions such as sharpness, brightness, tint, color, and so forth. The applicant has those. None of the secondary reference has those functions. Now, if you look at Northrop's circuit, there's multiple stages there. All of the secondary references rely on what's called a one-screen display. And I've detailed that in the brief. I've traced the circuit. Now, one-screen display is something that came out of the push for high-definition television about 20, almost 20 years ago because we're using binary signals rather than analog signals. And we have to be able to dissect the signals. Now, Northrop's one-screen display provides the same processes and the same information on the screen. A while back, it was called teletext, the text that goes along the bottom of the television. Now, it's up on the screen. So what you get is a visual display of alphanumerical letters, content. And that tells you, push this button, and you— But you're not answering my question. What feature, what claim feature here is missing in the prior article? Automatic. Northrop has no automatic. There's the two secondary references, too. Automatic what? Automatic. In reading under 103, the claim in its entirety, automatic demonstration of— You mean the demonstration model doesn't show the effect of changing the key, for example? Precisely, Your Honor. That's precisely it. In what would be analogous to a demonstration in Northrop, he's giving alphanumeric instructions. The same as Wakai, the same as Otsubo. But I thought that the examiner's answer, for example, of 41 and 42, suggests that these prior article references do have an automatic demonstration of Wakai, and the first two are on 41A, and those two go on 42B. They do have an automatic, and they do have a demonstration, and they use those terms. But it's a demonstration mode of which switch to push. Push this switch, and you get a number here. Push this switch, you get a number there. It's the same thing as it gets— It doesn't show the number in the demonstration model? It uses an arbitrary constant number. There's no adjustment. So if you push this switch, you get this number in the demonstration mode. Now, as the court pointed out, it doesn't show the effect of that selection and adjustment. What happens if you put in a 7-0-0 instead of 8-0-0? Do you get the programming for the Nationals baseball team? If you push in an 8, do you get the programming for the Nationals hockey team? What is the difference? It's not there. Northrop doesn't have that either. In fact, Northrop teaches that same function on his own on-screen display. Now, a different part in Northrop is the video circuit. The video circuit's not part of any of the secondary references. That's what shows you the effect of your adjustments in applicants' claims. You get the full gamut, or you can get the full gamut, but for broadly interpreting the claim, just take one adjustment, one increment. That's an adjustment. Now, what the property examiner's proposed combination gives you is animation. You're just getting an animated display. It's a sequence of fixed frames, and they admit that. These are arbitrary numbers. No rhyme or reason to the value of those numbers. All we're doing is if you take the gas station marquee, you put three numbers up there on the marquee for the price for extra leaded. We're teaching the gas station owner how to do that electronically. We're not telling them, well, you change lower the numbers by adjusting it. You're going to get this many sales per day. You raise it, you're going to decrease your sale. There's none of that teaching in the examiner's proposed combination. Now, in KSR, the court went into great detail, nine references, and they found, same as Graham versus John Deere, every element was present in the prior work. The court said that in John Deere. In KSR, the sensor was a known sensor. You go to the Digi-Key catalog, and you pick out your sensor. The pedal assembly, the accelerator pedal assembly, was in production. It was known. Forget the fact that the claim was drafted in European format in KSR. The court looked at each element in excruciating details and said something about each one of those references. One of the references, they had their own patent on it, by the way, but I guess we're going to correct that. Here, there's no suggestion that the prior work makes any adjustment or selection in combination to demonstrate, as the court pointed out, the effect of the picture functions. Those teachings are wholly absent here. In fact, the primary reference three times explains why he doesn't want to have that, why it's important to have what he calls the normal picture. That's a broadcast signal. Now, remember, Northrop is the preeminent in the whole United States man of ordinary skill in this art. RCA, 29 patent attorneys at that time. Every one of them working on televisions. They had a 30th attorney working on semiconductors, and then they had a chief patent attorney. They knew. They had a copy of every U.S. patent when Northrop was filed. So there's no one better skill in the art. And Northrop didn't want to do it. They said they don't want to do it. And they didn't have the idea of making a demonstration automatically of selection and adjustment of picture functions. Otherwise, I'm sure RCA would have followed. Remember, 29 patent attorneys, how many engineers working on nothing but televisions? So if we combine WCAG, we're combining something that's already in Northrop. Northrop has a timekeeping function. If we combine a SUBO, how to program a VCR, Northrop already has that using his own screen display circuit. And I did cover that in excretion in detail in the brief. Thank you. We'll save you a lot of time. Thank you. May it please the court, the board arrived at the invention in this case by taking So what's the answer to the question? He says that there's a feature missing. The feature is actually showing the results of adjusting the various knobs in the demonstration. And he says that's missing in the prior art. And I don't really see that addressed in your brief. Is it in the prior art? The prior art teaches automatic demonstration modes of all the features of those prior art devices. The prior art is called a watch. Well, let's talk about this one. Take as an example the adjustment of the pin. He says the prior art doesn't show in the demonstration of teaching you how to adjust the pin and showing the results of the adjustment. As I understand it, that's his point. And I think that's correct. I think our answer, the examiner's answer is correct. That precise teaching of showing the user in an automatic demonstration mode the way the tint is adjusted is not in the prior art. We believe we arrived there with the combination of the prior art. The prior art teaches the benefit of using an automatic demonstration mode in a variety of prior art devices, including a watch, a VCR, a video game. In both the watch reference, Wakai, and the VCR reference say we're not limited to the specific functions that are being taught here. So in other words, there was in the prior art a wealth of references showing the benefits of an automatic demonstration mode. Nortrup itself, the TV reference, notes that there is user confusion when you have a multifunction electronic device controlled by a few keys. We say, looking at the prior art, it would be obvious to import a demonstration mode into Nortrup that would demonstrate all the functions of that device. Nortrup clearly includes, as we show in the pictures in our brief, picture control functions such as tint and sharpness and contrast. It shows how those show up on the menu. Nortrup just lacks the automatic demonstration. But it's taught by the other prior art references. But if Nortrup essentially showed everything, including the demonstration, would that be an obvious consideration? Well, Nortrup doesn't have an automatic demonstration. Nortrup, when you press the right sequence of keys on your remote control, you will see on the menu the option for adjusting tint or sharpness. Which of the prior references shows the automatic demonstration? Both Wakai and Atsubo have automatic demonstration modes of those prior art multifunction electronic devices. How do you combine the two? We take the teaching of an automatic demonstration mode and apply it to the functions that are already in the Nortrup reference. In other words, Wakai and Atsubo both teach us that there is a benefit of freedom of reliance on user manuals that allow the ability to simply look at the display. I thought she told me a couple of minutes ago that there was a feature missing in the prior art. And that is sort of showing the results of changing remote controls. The tint knob. The tint knob. That there's no comparable feature in the prior art. And that's the problem. Am I accurately characterizing what you said? I don't want to mischaracterize it. I think so. We may still not be understanding each other completely. Let me try to restate my position. The fact is the watch prior art reference, the VCR prior art reference don't have a tint function on them. Well, sure. But that's not my question. Okay. Does the watch prior art reference show when you adjust the numbers it demonstrates the actual change taking place? That's the question here. It demonstrates the numbers. It gives sample times for setting the alarms. And those sample times are used in the demonstration mode in the same with the VCR prior art reference. In other words, there is an adjustment that is being demonstrated. It's just not a picture. Well, sorry. It's not a picture. I understand. Okay. But then I misunderstood your answer. Okay. So what you are saying is that these prior art references do show the actual adjustment taking place if we characterize them that way. That's correct. Maybe I'm confused between the actual and demonstration adjustment. But it appears that you're seeing the way the watch is being set or the VCR is being set using the reference talks about using sample times. That would be characterized as a demonstration, wouldn't it? Yes. The watch would be a demonstration in a particular direction. That is correct. So that's where the aspect of demonstration function comes in, in combination with what? I think that's correct. The watch provides a demonstration of how to set the watch, how to set the alarm on the watch, how to operate the stopwatch feature. If we're going to put it that way, then on the reasoning as to why in the office's view it would have been obvious to combine the demonstration shown in the watch with the television demonstration, Mr. Gershman makes this point that if it were so obvious, how come the leaders in the field didn't include it in their disclosure? The development in the field was clearly incremental. The Nordstrom reference is a 1984 reference and it was filed even before that. Nordstrom felt like he had addressed the problem by providing these menu screens and the sophisticated user can play with the VCR and figure out the functions of the device. Nevertheless, Atsubo and Wakai both teach that there is a benefit to the user or to a retailer demonstrating to the user to seeing an automatic run-through of the functions of the particular device. And so that's an additional feature that wasn't specifically claimed or mentioned in Nordstrom, but which Atsubo and Wakai both show the benefits of. You don't have to look at instruction manuals to figure out a multifunction device. That's expressed teaching in Wakai, page 8129. And that same benefit also proves to other multifunction devices like the TV in Nordstrom. Do you need a direct teaching in order to combine the two references? You can settle the work when you're skilled in the art of looking at the particular problem and say that we can find one aspect of it and not look at it. You can look at the other five art references and come up with a combination just because of my particular expertise in the art. Is that what they mean by common sense? I think that is a factor of common sense. I think that's very much what they're referring to in the portion of KSR that we referred to on page 22 and 23 of our brief where the court said, for the same reason, if a technique has been used to improve one device and a person of ordinary skill in the art would recognize that it improves similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. So in other words, a technique has been used to improve watches, VCRs, video games. The benefit is that you don't have to use user manuals. According to KSR, it would have been obvious to implement that in additional similar devices, similar multifunction electronic devices like a television set. So that's the kind of reasoning. Here we have the additional express teaching in WCAG that you don't need a user's manual. Why would it have been obvious to look, for instance, at the watch demonstration when we were concerned with the television? Well, at the outset, I can say I don't think that analogous art argument was preserved on appeal by the appellant. He made it before the court. The court answered it on page A-17 and A-18 of the record. The court said even assuming this isn't the same field of endeavor, Bokai was concerned with the same problem. In order for that, he cites page A-114. I think in this case, the board was looking broadly at multifunction electronic devices and saw a common problem. And here we've got more than one difference. The court was looking at the concept. But would a person with a problem to solve, not knowing the solution, look at the watch prior? I think as this court has reemphasized in the Conn case, for instance, Conn No, I'm asking about the reasoning in the examination process. Well, the reasoning in the examination process was we've got prior art concerning multifunction electronic devices. And that provides a teaching that for any given multifunction electronic device, it may well be obvious to provide a demonstration mode that would automatically demonstrate the functions. But don't you have to confront the question of whether it would be obvious to look in certain areas for clues as to how to solve this problem? I think that's correct. But I think the precedent of this court is that first you look to see whether you're in the same field of endeavor. Assuming for the purpose we're not in the same field of endeavor, you look to see You can put a bit of rationality in the analysis. But still, and I'm seeking the rationality of the court's analysis. Right, and that was they looked at the second column of the analogy, this art test, which is prior reference essentially addressing the same problem that the inventor was confronted with. And in this case, as acknowledged specifically in the Nordstrom application on page 8, 114A of the record, there was user confusion surrounding multifunction electronic devices. There is a problem teaching users how to use those devices. Well, CHI specifically provides one instance of a solution to that problem, like providing an automatic demonstration mode for a multifunction electronic device. And I go back to this first statement where it talked about prior art references and obvious variants thereof being essentially in the public domain and available to somebody with skill in the art to look at in deciding how to improve a different prior art device in front of them. How broad is the field of analogous art? Would a cell phone program be included? I think in this case, certainly, we live in a world where cell phones provide the same functions as TVs and computers. I think at this point, it's quite likely that somebody looking for a way to improve a cell phone would logically be commanded to any other electronic device, especially what we're talking about, a way to enhance the user's experience and help the user understand the device. So any particular device which has an electronic and has a visual face on it would be analogous art? I think it could be certainly used as analogous art in this context. If such a piece of prior art taught a demonstration mode, it would be natural for somebody confronted with the problem of teaching users how to operate a TV or another electronic device to look at the electronic devices that solve that problem, that solve the problem. So taking today's electronic capability, that doesn't really help, does it, in terms of putting ourselves back to the time being mentioned today? That's a fair point. I was simply responding to the question about the cell phone, but in this case, the board did look at the prior art at the time and found a number of different prior art electronic devices that we say would have commended themselves to the board in deciding how to, to the inventor, sorry, to improve prior art. I'm trying to find this whole thing as much as possible. And that was what the original E-Ray Elite was designed to deal with. Instead of you've got to put it in the record, you've got to explain what you're doing. And what you seem to be saying now is if there's analogous prior art that presents a similar problem, that in and of itself is sufficient to suggest a combination of my misunderstanding here. I don't think you are. I think that is the second part of the two-part test. So no further explanation is required from the board. All it says is analogous prior art is similar problem to solve this way in the analysis. I think if doing so results in the claimed invention, I think that's correct. And that's a proper use of art that has been found to be analogous. It's the sort of art an inventor would turn to to solve this problem. It's the teaching that's available to the public, to an inventor. The inventor would look there and apply that to improve the device before him. And I think that's a fairly straightforward understanding of the way the obvious analysis works. I think this time around, the PTO certainly improved vastly over what they did the first time. The examiner board were criticized for not providing a specific rationale and also for merely relying on the combination of a television with a video game. In this case, we've got now electronic devices, pieces of hardware, which have these automatic demonstration modes. And we have the precise teachings in those pieces of hardware that show what the motivation is to make the combination. So I think this is a classic teaching suggestion motivation test in compliance with the original opinion. Any other questions? If I may, Your Honor, the reason we're here today is we need the court's help. This is not an isolated case. Today I'm representing a large corporation. Many times we're representing independent inventors. And last year we resolved one of these problems by acquiring the examiner. Why are you making these grown men cry? I get the same reaction from a second advisory action from an independent inventor that I get from a criminal defendant that is unjustly accused. In a different case, an Adams Battery case, which is a battery, the examiner believes that this section requires the examiner look at the claimed invention and the prior art as a whole, not at the individual details. In other words, the examiner should consider whether the spirit of the claimed invention is in line with the spirit that the prior art is applying. That's what you have before you today. This is Office Action 26 in November 2007. In Reggie Lee's not the only case we have this problem. Is that part of the record? No. It's not. It's a case that Office Action was issued a month ago. But as I said, we need the court's help. We have to tell the office. You should be presenting evidence at this stage of the game when you start throwing the other references. I'm not presenting evidence. I'm asking for the court's assistance. And that would be helpful if you would respond to any of the points. Yes. The points are the solicitor said the secondary reference teach all of their features. We're substituting the word all for picture functions in the claim. How do I write claims? Are we supposed to write all of the functions in the claims or are we supposed to say picture functions? The secondary reference don't have any picture functions. The primary reference does. It's a different circuit. They don't use the on-screen display for the adjustment of the picture functions in applicants' claims. But the claims are limited to a particular circuitry. How are they limited? They're all method claims except claim 20. And that is directed, I believe, to the circuit itself. You can't use the one-screen generator to adjust the tint. It won't do it. But those limitations are in the claims. Pardon? The claims are limited to the method for automatically adjusting. Picture. Part of the problem is the breadth of the claim in terms of the combination of the offices. Yes, we can say the claims are broad, but we can say that about any patent claim that it's broad. The question is, are those claims fairly met by the examiner's proposed combination? The examiner's proposed combination is nothing more than a regurgitation of the teachings of Northrop for displaying on-screen text, giving instructions. That's animation. There's no adjustment. What does he adjust? Putting a 1 in a box in response to a user prompt? That's not an adjustment of anything. He's sticking an arbitrary and he admits an arbitrary fixed value in there. He never adjusts that value. He does not show you the consequences of that adjustment. There's no demonstration. Remember in the brief I pointed out that up in Baltimore they found what's called a palm quest from Aristotle. Aristotle teaches us about the ambiguity of the word demonstration, except Aristotle used feet instead of demonstration. Demonstration has many meanings. We're talking about class 434 in the USPTO. If you go through 434, the big section is gunnery. Now, I remember what the government issued me. Mr. Stern remembers what they issued him, different mechanisms. If you're training how many million men a year to use these mechanisms, where's the demonstration? There's none. Where's Northrop's demonstration automatic for his remote controller? When you push this button, what happens? When you adjust this button, what happens? Northrop doesn't have a demonstration mode in the sense that Applegate has of selection and adjustment. Why not? Even in 2007, I think there's no demonstration mode for the RCA remote controller. Why not? My brand new cell phone, where's the demonstration mode? I just have to futz around with the keys until I get it right. Why don't we have that? It's not so obvious. The reason is you need an animator for that kind of demonstration. For adjustment, you need a mechanic. Judge Markey would recognize immediately the Air Force trained about half of its people was what they called equipment repairmen. Most of the time, what they're doing is not replacing parts because the Air Force doesn't like to bind new parts. They have to adjust the old parts to make them work correctly. You're telling us that the references were not combinable. Is that right? If they're combinable, if you combine them, you've added nothing to Northrop. Northrop's newer than Tsubo and Wakai. He already has those functions incorporated in there. How to program a VCR. I went through that in the brief tracing his on-screen display circuit. We must move on, Mr. Bush. If I could commend the court. New evidence. Cordis Corporation vs. Medtronic. Page 18 of the slip of paper. Thank you.